154 So.2d 657

**Will LEWIS**

v.

**CITY OF BIRMINGHAM.**

6 Div. 709.

Supreme Court of Alabama.

May 9, 1963.

Rehearing Denied June 27, 1963.

**302**

Rogers, Howard, Redden & Mills, Birmingham, for appellant.

Shuford B. Smyer, W. Bruce White, A. Lamar Reid, Wm. M. Acker, Jr., Fred L. Smyer, Walter Fletcher, Frank M. James, Herbert J. Ward, Jas. M. Tingle, and Romaine Scott, Jr., Birmingham, amici curiae in behalf of appellant.

Earl McBee, Birmingham, for appellee.

PER CURIAM.

In this case a bill in equity was filed by Will Lewis against the City of Birmingham to enjoin the encroachment and trespassing upon property owned by him. The practical purpose of the bill is to enjoin the widening of pavement and installation of curb and gutter in Lomb Avenue or Lomb Boulevard, a street in the City of Birmingham. The complaint is that such improvements encroach upon Lots 6 and 7, Block 21, P. Rising's Survey of Compton. The alleged encroachments are shown by a drawing, attached to the bill and marked Exhibit A.

Respondent's answer to the complaint is that the improvements are properly located in the street called Lomb Avenue or Lomb Boulevard. It is alleged that such boulevard has been relocated in the present location by acts constituting a dedication thereof on the part of the abutting owner or owners, recognized and accepted by respondent and by the public, and that the same has been established as a street by public user and municipal recognition for more than twenty years. The answer alleges the completion of the improvements and in the alternative, in the event an encroachment is found to exist, the respondent offers to pay the value of any property taken.

It is agreed that Lomb Avenue or Lomb Boulevard is a public street sixty feet wide. It appears that the point of dispute between the parties is simply the location of the street. It is undisputed that it is not in the original location shown by the Rising Survey of Compton filed for record in 1887. It is undisputed that the complainant is the owner of Lots 6 and 7 according to the Survey of Compton, a map or plat of which is recorded in Map Book 1 at page 83 in the office of the Probate Judge of Jefferson County. To summarize the situation, it is the claim of the City that the improvements were made in a street known as Lomb Avenue or Lomb Boulevard and therefore do not encroach upon the property owned by the complainant. The case was tried orally before the court and after hearing the evidence, the court upheld the claim of the City and denied the relief prayed for. This appeal is from that decree.

P. Rising's Survey of Compton is rectangular in shape, three blocks in width by ten blocks. The sixty-foot street in question is designated South Street on such map, which was recorded in the office of the Judge of Probate of Jefferson County on July 27, 1887. Since the case was tried orally before the court, we think it is well to set out the material portions of the court's final decree:

"It is not questioned that Lomb Avenue, or boulevard, consists of a right-of-way 60 feet in width within the 'Compton Survey', and this appears to be true as to its extension east and west through adjoining surveys. The question of difficulty is the exact location. One Phillip Rising was the sub-dividing owner of the property who conveyed it to the Traders Investment Company on May 27, 1901. This latter owner apparently prepared a plat and.

survey, a tracing of which has been on file in the Office of the City Engineer since 1922. This tracing purports to show a relocation of Lomb Boulevard, then also known as South Street, by shifting it in a southerly direction so as to make it parallel with Florence Street, and causing it to intersect at right angles with Rising and Lancaster Avenues, the east-west Streets which intersect it. This reflects some variation from the plat recorded by Mr. Rising in 1887.

"The inception of complainant's title was by deed executed November 15, 1947.

"It was the opinion of the Court that this tracing was properly received in evidence as secondary to an original ancient document lost or destroyed. The copy was maintained in the City Engineer's office pursuant to mandate of City Ordinance and also by statute.

"What involved is not an original dedication of a roadway, but rather a change in the location of same accepted by the then land owner with intent and under circumstances evincing dedication of a new site. The Court cannot agree with respondent's contention that the newly improved area closest to complainant's road is subject to an easement for a public way by prescription, * * * However, the Court does agree with, accepts, and accordingly ORDERS, in agreement with respondent's contention, that a relocation by act of the owner of all affected lots in the survey followed by acceptance and use by the public and working by the City for over twenty years is sufficient to show a dedication in the changed location.

"And it follows that the complainant, as owner of Lots 6 and 7, in Block 21, Compton's Survey, (both subsequently replatted by Rising and Traders) is not entitled to the injunctive relief sought against the recent improvement within the right-of-way, that no condemnation proceeding under the power of eminent domain is now required, or to other relief under the general prayer, and it is, therefore,

"ORDERED, ADJUDGED, and DECREED by the Court that the relief sought by complainant, Will Lewis, against respondent, City of Birmingham, in the instant cause be, and the same hereby is denied, * * *."

 Since the testimony was heard by the court ore tenus, we shall not review the evidence in detail, because the finding of fact by the trial court has the effect of a jury's verdict, which will not be disturbed on appeal unless palpably and plainly wrong. Hinson v. Byrd, 259 Ala. 459, 66 So.2d 736. However, there are some matters to which we shall refer briefly. It is argued that at the time complainant purchased the property, he had no notice of the change in name from South Street to Lomb Avenue, or the change in its location. A deed from P. Rising and wife to Traders Investment Company was introduced in evidence. It is dated May 27, 1901. In this deed all of Block 21 in its entirety was conveyed to the named grantee; likewise Blocks 1, 2 and 19 and all of Lot 20, except two lots. These were the blocks affected by the change in location of South Street, renamed Lomb Boulevard, as shown in the Traders Investment Company map, which has been on file in the office of the City Engineer since 1922. Otherwise, a comparison with respondent's Exhibit E, the original survey of Rising's Compton, shows that the two maps are identical.

As shown by the above deed by Rising to Traders, the change in name and location had already taken place or was in the immediate planning. In this regard, the deed contains an exception from the property conveyed of a right-of-way for Lomb Avenue from certain blocks of the Survey of Compton recorded in Map Book 1, page 83. The exact language used therein is: "Excepting a right of way for an avenue now known as Lomb Avenue, through certain lots in blocks 1, 2, 19, 20, 21 and 22."

Complainant acquired his interest in the lots in question on November 15, 1947, by deed of conveyance from E. E. Waites and wife. This deed provides: "The within described property is conveyed subject to the existing easements and rights of ways."

Mr. James T. Waggoner, Commissioner of Public Improvements; Mr. Neal McRae, Superintendent of Streets; and Mr. N. R. Daniel gave testimony covering a span of years from January, 1933, to 1960, when the final paving was done, tending to show that during such period of twenty-seven years, to the personal knowledge of one or more of such witnesses, the City of Birmingham Street Department had constantly and regularly worked Lomb Boulevard for vehicular traffic to within a foot or two of the front of the building erected by Will Lewis.

■ The City Engineer of the City of Birmingham is required by ordinance "to keep in proper form, as part of the records of his department the plans, surveys and maps of the sewerage system of the city, and the widths and grades of the streets of the city." Section 93, General City Code 1944.

Section 94, General City Code 1944, provides:

"All surveys, profiles, plans and estimates made by the city engineer or his assistants for the city shall be the property of the city and shall be carefully preserved in the office of the city engineer, open to the inspection of the city officers and parties interested, and the same, together with all books, papers and documents and instruments appertaining to said office shall be delivered by such engineer to his successor or to the commission at the expiration of his term of office."

Judicial notice is taken of the above ordinances. See § 429(1), Title 7, Code of Alabama 1940.

"All transcripts of books or papers or parts thereof, required by law to be kept in the office, custody or control of any public officer, agent, servant, or employee of any municipality, city, county, or of the state of Alabama, or of the United States, when certified by the proper custodian thereof, must be received in evidence in all courts; * * *." Section 393, Title 7, Code of Alabama 1940.

See also § 432(5) (6), Title 7, Code of Alabama 1940.

■ We agree with the trial court that the complainant had notice of the change in name and location of the street when he made his purchase in 1947.

■ It is argued by appellant that there is no dedication because no dedication of a street within the City of Birmingham is valid and effective without the assent of the governing body of the City evidenced by an ordinance or resolution adopted by such governing body. Section 662, Title 62, Code of Alabama 1940.

This statute is not applicable for several reasons. In the first place, it is obvious that the change in location was accomplished long before its enactment. In the second place, this statute clearly applies to the dedication of a street and not merely a change in location of one already dedicated twenty-eight years before it was enacted.

Tuxedo Homes, Inc., v. Green, 258 Ala. 494, 63 So.2d 812, is cited by appellant as holding no sufficient assent of the City of Birmingham, as provided for in such act, was shown. This case has no application here. It dealt with the right of the owner of a subdivision to require by mandamus the city engineer and city commissioners to enter their approval upon his map or plat to permit its recording in the office of the Judge of Probate of Jefferson County, as provided or required by §§ 12, 13, 14 and 15 of Title 56, Code 1940, as such right is affected by said 1915 act. Section 662, Title 62. Demurrer to the petition for mandamus was sustained. The Supreme Court reversed and rendered, holding in effect that such approval required by Title 56 could not be withheld for the reason that

no burden would be placed upon the City thereby.

The issue of burden of improvement and maintenance, *vel non,* is not involved in this case. The City of Birmingham has maintained the originally dedicated street as it has been shifted in the location for at least twenty-seven years and has paved (1939) and twice widened (1952, 1960) the pavement of this main artery of the city, of which a dedication of three blocks is included in Rising's Survey of Compton. Certainly, the City has long ago accepted responsibility for maintenance and improvement of this street.

We conclude that the decree of the lower court should be affirmed.

The foregoing opinion was prepared by STAKELY, Supernumerary Justice of this Court, and was adopted by the Court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, GOODWYN and COLEMAN, JJ., concur.